**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **MILAGRO D. MARTINEZ,** *et al.*, | * |
|  | * |
| Plaintiffs, | * |
|  | * |
| v. | Case No.: PWG-15-223 |
|  | * |
| **K & S MANAGEMENT SERVICES, INC.,** a/k/a **K & S MANAGEMENT SERVICE, INC.,** *et al.* | * |
|  | * |
| Defendants. | * |
|  | * |

* * * * * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Defendants K & S Management Services, Inc. a/k/a K & S Management Service, Inc. and K & S Management and Supply, Inc. (together, "K & S") "own and operate a cleaning business that provides janitorial services," for which Plaintiffs Milagro D. Martinez, Francisco Gonzalez Martinez, Gustavo Josue Gonzalez Martinez, and minor M.M. worked as "janitorial staff." Second Am. Compl. ¶¶ 21–22, ECF No. 25.[1] Plaintiffs worked "as a team unit," and K & S "paid plaintiffs collectively, in a single paycheck intended to be equally divided among them." *Id.* ¶¶ 25–26. K & S "compensated plaintiffs according to a payment scheme based on the number of suites, or 'floors,' that plaintiffs cleaned during a given pay period." *Id.* ¶ 30. This translated into inconsistent hourly rates for Plaintiffs that were sometimes as low as $3.17 per hour each, when the federal minimum wage was $7.25 per hour and the state and county minimum wages were greater. *Id.* ¶¶ 36–40.

---

[1] For purposes of considering Defendants' motions to dismiss, I accept as true the facts that Plaintiffs alleged in the Second Amended Complaint. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

Plaintiffs filed suit on January 27, 2015, ECF No. 1, and served Defendants on January 28, 2015 and February 10, 2015, ECF Nos. 5 and 6. K & S terminated Plaintiffs on March 23, 2015, and then Plaintiffs amended their complaint twice, in part to add a claim for retaliation based on their termination. ECF Nos. 17, 25. In their Second Amended Complaint, they claim that Defendants failed to pay them minimum wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code. Ann., Lab. & Empl. § 3-401 *et seq.*;[2] the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code. Ann., Lab. & Empl., § 3-501 *et seq.*; and the Prince George's County Minimum Wage Law ("PGCMWL"), Prince George's Cnty. Code § 13A-117, and retaliated against them in violation of the FLSA. Defendants initially filed an Answer, ECF No. 7, and now have moved to dismiss for lack of jurisdiction and failure to state a claim. ECF No. 29.[3] Because this Court has jurisdiction and Plaintiffs clearly have stated adequate claims, I will deny Defendants' motion.

**Standards of Review**

Because K & S answered before moving to dismiss, the motion to dismiss for failure to state a claim is a Rule 12(c) motion. *See* Fed. R. Civ. P. 12(c), (h)(2)(B). "'Rule 12(c) motions are governed by the same standard as motions brought under Rule 12(b)(6).'" *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014) (citation omitted). A motion to dismiss for failure to state a claim is intended "to test the sufficiency of a complaint and not to resolve contests surrounding

---

[2] "The MWHL 'mirror[s] ... the federal [FLSA] law,' and the Plaintiffs' MWHL claim 'stands or falls on the success of their claim under the FLSA.'" *Jennings v. Rapid Response Delivery, Inc.*, No. WDQ-11-92, 2011 WL 2470483, at *5 (D. Md. June 16, 2011) (quoting *Turner v. Human Genome Sci., Inc.,* 292 F. Supp. 2d 738, 744 (D. Md. 2003)). Therefore, I will analyze Plaintiffs' FLSA and MWHL claims together.

[3] The parties fully briefed the motion, ECF Nos. 38, 41, and Plaintiffs filed a Surreply, with permission. ECF No. 44; *see* ECF No. 43. A hearing is not necessary. *See* Loc. R. 105.6.

the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a Rule 12(b)(6) motion to dismiss. Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," as K & S also does here, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013); *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013). Thus, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see In re KBR, Inc., Burn Pit Litig.*, 925 F. Supp. 2d 752, 758 (D. Md. 2013) (quoting

*Kerns*, 585 F.3d at 192). This Court must act "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted).

### Jurisdiction

K &S argues that this Court lacks jurisdiction because neither Plaintiffs nor any other employee of theirs was engaged in the production of goods for commerce, and therefore the FLSA is inapplicable. Defs.' Mot. 4-5. In their Reply, they insist that 29 U.S.C. § 206 only provides for payment of minimum wage to "'*employees* who in any workweek . . . engaged in commerce or in the production of goods for commerce,'" without regard to "[w]hether employers are 'engaged in commerce.'" Defs.' Reply 8. Plaintiffs counter that it is not a question of whether *they* engaged in commerce but rather "whether the Defendants have *any* employees" who did, and that K & S must have had employees engaged in interstate commerce because they used equipment and materials, and they provided such goods to Plaintiffs across state lines. Pls.' Opp'n 4–5.

In Plaintiffs' view, this is not a jurisdictional matter, and any lack of an allegation of a covered entity can be remedied after discovery. *Id.* at 3–4. They cite *Malloy v. Ass'n of State & Terr. Solid Waste Mgmt. Officials*, 955 F. Supp. 2d 50, 53 (D.D.C. 2013), which is not binding on this Court. This Court "review[s] this issue under the Rule 12(b)(1) standard and has held that where an employer is not subject to the FLSA, the court lacks subject matter jurisdiction over the case and vice-versa." *Aguilar v. LR Coin Laundromat, Inc.*, No. RDB-11-02352, 2012 WL 1569552, at *4 n.1 (D. Md. May 2, 2012) (citing *Diaz v. HBT, Inc.,* No. RWT–11–1856, 2012 WL 294749 (D. Md. Jan. 31, 2012); *Russell v. Continental Restaurant, Inc.,* 430 F. Supp. 2d 521, 523–27 (D. Md. 2006)).

Plaintiffs' argument otherwise is quite sound.  Regardless of Defendants' myopic view of § 206, the Fourth Circuit concluded in *Dole v. Odd Fellows Home Endowment Board* that § 206 applied to the defendants because they were an "enterprise engaged in commerce for purposes of the Act," without considering whether the employees themselves engaged in commerce.  912 F.2d 689, 692, 695 (4th Cir. 1990).  Indeed, the minimum wage provision requires that employers shall pay minimum wage "to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, ***or is employed in an enterprise engaged in commerce or in the production of goods for commerce***."  29 U.S.C. § 206 (emphasis added).  Because the statute is disjunctive, the employee himself need not engage in commerce if the enterprise is engaged in commerce.  *See id.*

Thus, a plaintiff who "was not individually engaged in commerce" still may "be covered by the FLSA's overtime provisions if he was an employee in an 'enterprise engaged in commerce or in the production of goods for commerce.'"  *Rains v. E. Coast Towing & Storage, LLC*, 820 F. Supp. 2d 743, 748 (E.D. Va. 2011).

> [T]he FLSA defines such an enterprise as one that:
>
> (A) (i) has employees engaged in commerce or in the production of goods for commerce, ***or*** that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; ***and***
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

*Id.* at 748–49 (quoting 29 U.S.C. § 203(s)(1) (emphasis in *Rains*).  "Subsection (i) 'has two distinct prongs from which an employer can qualify as an enterprise under the statute,'" *Diaz*, 2012 WL 294749, at *2 (citation omitted), and it is the second prong that is at issue in this case.  This prong

> mandates that "[l]ocal business activities are subject to the Act when the enterprise employs workers who handle goods or materials that have moved in interstate commerce." *Dole v. Odd Fellows Home Endowment Bd.,* 912 F.2d 689, 693 (4th Cir. 1990). "[I]t is well established that local business activities fall within the FLSA when an enterprise employs workers who handle goods or materials that have moved or have been produced in interstate commerce." *Brock v. Hamad,* 867 F.2d 804, 808 (4th Cir. 1989). "The requisite connection to interstate commerce is shown where an employer has at least one employee who regularly ordered, received, and handled goods (such as food, liquor, and linens ...) that originated outside the [state]." *Martin v. Deiriggi,* 985 F.2d 129, 133 n.2 (4th Cir. 1992).

*Id.* Notably, in *Dole*, the employer qualified as an enterprise for FLSA purposes where the employees "attend[ed] to the personal care needs of residents and provide cooking, *cleaning*, and laundry services." 912 F.2d at 694 (emphasis added). And, in *Diaz*, this Court observed:

> [I]t would be a rare occurrence . . . that a defendant satisfies the volume of sales requirement of 29 U.S.C. § 203(s)(1)(A)(ii), but not satisfy the § 203(s)(1)(A)(i) requirement. It is difficult to imagine a defendant employer in the twenty-first century that does not have employees who handle, sell, or otherwise work on goods or materials that have moved in or have been produced for commerce by any person.

2012 WL 294749, at *4 (denying the defendant's motion to dismiss on the ground currently before me where the plaintiff worked at the defendant's Maryland restaurant, "pick[ed] up food products" in Virginia, and "had 'personal knowledge' that Defendant purchased and sold food products that were grown outside of Maryland and that Plaintiff regularly handled them at his job").

The cases on which K & S relies, *Russell*, 430 F. Supp. 2d 521, and *Aguilar*, 2012 WL 1569552, are distinguished easily, as the Court did not address § 203(s)(1)(A)(i) in either case because the defendant employers showed that they were not enterprises that the FLSA covered under § 203(s)(1)(A)(ii), due to insufficient earnings. Instead, the Court considered whether the employee plaintiffs themselves engaged in interstate commerce because, if they did, they would be covered employees under the FLSA, regardless of the amount the employers grossed. It is

true that, in that analysis, this Court rejected the allegation that the employees worked with goods that "came from out-of-state" as a basis for concluding that the employees were covered employees. *See Aguilar*, 2012 WL 1569552, at *6 (comparing facts to *Russell*). But, in *Aguilar*, the defendants showed that the supplies the employees handled in Maryland actually came from a Maryland distributor. *Id.* Moreover, in *Dole*, where the court did address § 203(s)(1)(A)(i), the Fourth Circuit "agree[d] with the district court that there [was] no genuine dispute that the employees . . . handled or otherwise worked on goods or materials that moved in interstate commerce" where they "prepared and served food to the residents [of the defendant's home for the aged], washed the residents' laundry and cleaned the Home, and performed maintenance tasks, all the time using goods and materials that had traveled in interstate commerce." 912 F.2d at 695.

Here, Plaintiffs have alleged that Defendants, Virginia corporations with their principal places of business in Virginia, "provided almost all of the equipment and materials that plaintiffs used to perform their janitorial work," which Plaintiffs performed in Maryland. Second Am. Compl. ¶¶ 10-11, 22-23. Indeed, in Defendants' Answer, although they denied that Francisco Gonzalez Martinez and M.M. worked for them, they admitted that they were Virginia corporations with principal places of business in Virginia and that they provided equipment and materials to Milagro Martinez and Gustavo Josue Gonzalez Martinez, who worked for them in Maryland. Ans. ¶¶ 9, 10, 22, 23. Thus, the goods originated in, or at least once were in, Virginia and then traveled across state lines to Maryland, where Plaintiffs, like the employees in *Dole*, used them to provide cleaning services. As in *Diaz*, the plaintiffs worked in Maryland, using products from outside of Maryland. Therefore, K & S's workers "handle[d] goods or materials that . . . moved in interstate commerce." *See Dole*, 912 F.2d at 695.

7

K & S argues that the FLSA does not apply because "Defendants are the ultimate consumer" of the cleaning products that Plaintiffs used. Defs.' Reply 10 n.4. But in *Dole*, the Fourth Circuit said that the fact that the defendant "was in some sense the 'ultimate consumer' of the goods and materials that moved in interstate commerce does not preclude application of the Act." 912 F.2d at 695 (citing *Brock*, 867 F.2d at 807–08). Thus, Plaintiffs' allegations are sufficient to give rise to this Court's jurisdiction under § 203(s)(1)(a)(i) of the FLSA and to survive Defendants' motion to dismiss. *See id.* at 694; *Diaz*, 2012 WL 294749, at *4.

### **Joint Employers**

Plaintiffs allege that Defendants were joint employers because they received checks from both entities, "Defendants share common owners, directors, officers, managers, and a place of business," and "[o]n information and belief, defendant K & S Management Services, Inc. is either a wholly-owned subsidiary, or corporate alter-ego, of defendant K & S Management and Supply, Inc." Second Am. Compl. ¶¶ 12, 13, 27. Defendants admit that they employed two of the Plaintiffs, but contend that those Plaintiffs worked for each Defendant during a distinct time period: for K & S Management and Supply, Inc. until August 2013, and for K & S Management Services, Inc. after that. Ans. ¶¶ 1, 16–18. Yet, in Defendants' view, Plaintiffs' Second Amended Complaint is subject to dismissal because they do not sufficiently claim joint employer status. Defs.' Mot. 6. Defendants are wrong.

Two employers may be "individually and jointly" liable under the FLSA "if the facts establish that . . . employment by one employer is not completely disassociated from employment by the other employer(s)." 29 C.F.R. § 791.2. Then, "all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act." *Id.* In contrast, *id.*,

> [i]f all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act.

Significantly, Plaintiffs need not show joint employer status to state a claim under the minimum wage laws or a claim for retaliation under the FLSA or MWHL. They only need to "allege facts sufficient to establish the existence of an employer-employee relationship." *Jennings v. Rapid Response Delivery, Inc.*, No. WDQ-11-92, 2011 WL 2470483, at *3, *5 (D. Md. June 16, 2011). Joint employer status may provide a basis for dismissal of an FLSA or MWHL claim against a second defendant where it is clear that one defendant is the plaintiff's employer but less clear that the second defendant also is the plaintiff's employer. *See, e.g.*, *id.* at *4–5. And, "[a]n MWPCL claim against a joint employer cannot be sustained if the plaintiff fails to allege that the joint employer was involved in payment of his wages." *Id.*

Yet here, Plaintiffs do not allege that Defendants are a primary and secondary employer. Rather, Plaintiffs simply allege that "*Defendants*" "owned and operated" the cleaning company for which Plaintiffs worked; "*Defendants* hired plaintiffs," delegated work to them, and paid them; and they received checks from " 'K & S Management Service, Inc.' 'K & S Management Services, Inc.' and 'K & S Management & Supply, Inc.'" Second Am. Compl. ¶¶ 1, 25, 26, 27, 34 (emphasis added). Moreover, Defendants admit that each employed two of the Plaintiffs, while asserting that they did so at different periods of time. Ans. ¶¶ 1, 16–18. Thus, these allegations that each Defendant is Plaintiffs' employer are more than sufficient to survive Defendants' motion to dismiss. Should they have a good faith basis for doing so, Defendants may address the extent of their possible individual liability through summary judgment briefing following discovery. But, I will not dismiss Plaintiffs' Amended Complaint on this ground.

**Acceptance of Terms of Employment**

Defendants argue that Plaintiffs cannot state a claim because they accepted the terms of employment, under which they "were paid on a per-floor or per-building basis," rather than hourly, Defs.' Mot. 11–12, but Plaintiffs counter that such acceptance would not be valid, Pls.' Opp'n 10–11. Indeed, "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945) (concluding that employee could not waive right to liquidated damages under FLSA). Thus, "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (concluding that truck drivers had viable FLSA claim for compensation for off-the-clock time spent conducting mandatory safety inspection, despite failure of claim for such compensation before joint grievance committee under collective bargaining agreement). And, the MWHL and MWPCL both provide that "[a]n agreement to work for less than the wage required under [either law] is void." Lab. & Empl. § 3-405; *see id.* § 3-502(f) (same).

Defendants differentiate *Brooklyn Savings Bank*, on the basis that there, the Supreme Court "did not address whether the method of work being performed at a fixed rate could be agreed to," which is what happened here. Defs.' Reply 14–15. In their view, Plaintiffs fail to allege that they "ever informed any agent of Defendants of their situation or complained [that] any one of them was paid less than the minimum wage," and "employees who continue to work under a fixed payment system which may adversely affect their wages based on the hours worked cannot sit still and ambush their employer when the employer could have added workers

10

or reduced hours to ensure payment of FLSA wages." *Id.* (citing *Holb v. City of Beaufort*, 996 F.2d 1211, 1993 WL 219806, at *5 (4th Cir. 1993)). Essentially, they contend that Plaintiffs agreed to a flat rate that resulted in hourly wages below the minimum wage, but never complained to Defendants that they received less than minimum wage, such that they could not sue Defendants for failure to pay minimum wage without first giving them the opportunity to rectify the situation. *See id.*

*Holb*, 1993 WL 219806, on which Defendants rely, is inapposite. There, the firefighter employees sought to be paid overtime, based on working more than forty hours per week when sleep and meal times were included in their hours worked. It is true that the Fourth Circuit concluded that the firefighters implicitly agreed, through their "continuous employment" without any formal complaint, not to be paid for time sleeping and eating, and the court stated that it would "not allow employees merely to grumble about the compensation scheme and then later spring a surprise attack on an employer who has tried to comply with the options that the FLSA provides." *Id.* at *5–6. But in *Holb*, there were relevant federal regulations that permitted public employers of firefighters to use the payment scheme that the defendant city employed, provided that the employees agreed. *See id.* at *2–3. Therefore, because the employees agreed to the payment scheme, it did not violate the FLSA. *See id.*

Here, even if Plaintiffs agreed to the payment scheme, it nonetheless resulted in wages below minimum wage, in violation of the FLSA, MWHL, and MWPCL, and Defendants have not identified any regulation or other provision providing an exception to the minimum wage requirement under these circumstances. Therefore, Plaintiffs have stated a claim for failure to pay minimum wage based on their acceptance of a flat rate that translated to hourly pay below

minimum wage.  *See Barrentine*, 450 U.S. at 740; *Brooklyn Sav. Bank*, 324 U.S. at 704.  I will not grant Defendants' motion to dismiss on this basis.

## FLSA, MWHL, and PGCMWL[4] Minimum Wage Claims

The FLSA, MWHL, and PGCMWL provide for the payment of minimum wages.  *See* 29 U.S.C. § 206; Lab. & Empl. § 3-413; Prince George's Cnty. Code § 13A-117.  Defendants argue that Plaintiffs fail to state a claim under these statutes because they fail to "specify either the dates or times when individual plaintiffs were underpaid wages" or to provide any information about being hired as a "team unit." Defs.' Mot. 7.  According to Defendants, "for FLSA plaintiffs to survive a motion to dismiss, they 'must identify in the [operative pleading] the number of hours worked in a work week and the remuneration given by Defendant for that week.'" Defs.' Reply 2 (quoting *Tall v. MV Transportation*, No. DKC-13-2306, 2014 WL 2964279, at *5 (D. Md. 2014) (emendation added)).  As Defendants see it, Plaintiffs allege they were paid the minimum wage by claiming that "Defendants' practice of regularly altering cleaning assignments resulted in defendants paying plaintiffs at substantially different effective hourly rates, ranging from $3.17 in some weeks, *to $7.65 in other weeks*." Defs.' Mot. 7 (quoting Second Am. Compl. ¶ 36) (emphasis added).

Plaintiffs counter that they did not need to include the level of detail Defendants seek, and that in any event it appears in their damages disclosure, which they could incorporate by reference. Pls.' Opp'n 8–9.  According to Plaintiffs, the cases that Defendants cite (*Tall*, 2014 WL 2964279, and *Avery v. Chariots for Hire*, 748 F. Supp. 2d 492 (D. Md. 2010)) concern "off-

---

[4] Defendants argue that the PGCMWL claim fails "for the same lack of specificity as the FLSA and MWHL claims." Defs.' Mot. 11.  Therefore, I will consider them together in this section.  I will address Defendants' arguments as to sufficiency of the minor Plaintiff's PGCMWL claim separately, below.

the-clock work and/or hours shaving," circumstances that require more detailed pleading than Plaintiffs' simple failure to pay minimum wage. *Id.* at 9.

In *Tall*, the plaintiff's claim for failure to pay minimum wage under the FLSA was based on the employer's failure to pay him at all for certain hours worked. *Tall*, 2014 WL 2964279, at *5. This Court observed, *id.*:

> The FLSA does not guarantee that employees are paid for every hour of work and does not allow for employees to recover more than the statutory minimum wage." *Avery,* 748 F. Supp. 2d at 501. In order to state a claim for a minimum wage violation under the FLSA, Plaintiff must allege that he did not receive compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate during a given week. *See Blankenship v. Thurston Motor Lines, Inc.,* 415 F.2d 1193, 1198 (4th Cir. 1969).

The Court concluded that the plaintiff failed to state a claim under the minimum wage law because he did not allege that, on the relevant "'workweeks . . . [when] he was allegedly required to work "off-the-clock," his average hourly wage fell below the applicable minimum wage.'" *Id.* (citation to record omitted). Moreover, the Court could not find that he received less than minimum wage in any given week "because Plaintiff provide[d] no information indicating how much he was paid on a weekly basis and the number of hours worked each week," and consequently "it [was] impossible to ascertain whether Plaintiff was or was not paid above the statutory minimum wage." *Id.* Similarly, in *Avery*, the plaintiffs' FLSA minimum wage claim failed because they "alleged that they were unpaid for certain hours that they worked, but [did] not allege[] that they were not paid the statutory minimum wage for each of the total number of hours they worked." 748 F. Supp. 2d at 501.

Here, as Defendants noted, Plaintiffs have alleged that they were paid "different effective hourly rates, ranging from *$3.17 in some weeks*, to $7.65 in other weeks." Second Am. Compl. ¶ 36 (emphasis added). They further alleged that the federal minimum wage was $7.25 per hour,

*id.* ¶ 38, and the state and county minimum wages were greater, *id.* ¶¶ 39–40. Thus, they have alleged that, on some weeks, their "average hourly wage fell below the applicable minimum wage." *See Tall*, 2014 WL 2964279, at *5 (citation and quotation marks omitted). Certainly, where they allege average hourly wages in excess of the minimum wage, such as when they earned an average of $7.65 per hour, they cannot recover on those weeks. But these higher wages do not negate the allegations of below-minimum-wage payments in other weeks. *See id.* (requiring allegation of failure to pay statutory minimum "during a given week"). Plaintiffs' FLSA, MWHL, and PGCMWL minimum wage claims are sufficient to withstand Defendants' motion to dismiss on this ground.

### **MWPCL Claim**

Defendants argue that Plaintiffs' MWPCL claim fails because the MWPCL has to do with timing of payment, and Plaintiffs fail to allege any issue with timing. Defs.' Mot. 9. Plaintiffs contend that their pleadings are adequate because *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625 (Md. 2014), provides that "MWPCL claim lies when employers do not pay the wages they are required to under the MHWL." Pls.' Opp'n 9.

This Court routinely has held that, while allegations of failure to pay minimum wage "may lead to Defendant's liability under the FLSA and/or the MWHL, . . .they do not state a cause of action under the MWPCL." *Forkwa v. Symbral Found. for Cmty. Servs.*, No. PWG-11-3513, 2013 WL 4760985, at *5–6 (D. Md. Sept. 3, 2013) (citing *Andrews v. Comcast Cable Commc'ns Mgmt., LLC,* No. WMN–12–2909, 2013 WL 3322337, at *2 (D. Md. June 28, 2013) (discussing previous cases)). But, more recently the Maryland Court of Appeals clarified that minimum wage claims are actionable under the MWPCL, which defines "wage" as "'*all compensation that is due to an employee* for employment,'" even if the focus of the law is on

14

timing, because otherwise "an employer would be immune from an employee's [MWPCL] suit" if it timely paid wages but "unlawfully withh[eld] all but one cent of the wages due, which cannot have been the legislative intent." *Marshall v. Safeway Inc.*, 88 A.3d 735, 745–46 (Md. 2014). (quoting Lab. & Empl. § 3-501(c)(1) (emphasis in *Marshall*)); *see also Peters*, 97 A.3d at 625 ("This Court recently addressed the WPCL's scope in *Marshall v. Safeway, Inc.,* where we repeated our rejection of a narrow reading of the WPCL. 437 Md. 542, 560, 88 A.3d 735, 745 (2014). We were called upon to do so in the face of federal court decisions that continued to restrict its application."). All but one case Defendants cite in this regard predate this clarifying Maryland Court of Appeals opinion. The one post-*Marshall* case on which Defendants rely, *Blank v. Giant of Maryland, LLC*, No. MAB 14-cv-01722, 2014 WL 3866017, at *5 (D. Md. Aug. 5, 2014), is distinguished easily, as it pertained to the overall sufficiency of the allegations, not whether a plaintiff can state a claim without alleging, in particular, that payments were not timely. This claim is not subject to dismissal. *See Peters*, 97 A.3d at 625; *Marshall*, 88 A.3d at 745–46.

### M.M.'s PGCMWL Claim

Defendants contend that the county wage requirements for the one minor plaintiff, M.M., are different and there are not sufficient allegations of any violation of the PWGMWL as to her. Defs.' Mot. 11. Specifically, Defendants insist that "Section 13A-117(e)(2) [of the Prince George's County Code] does not apply to persons under the age of 19 working up to 20 hours in a week," and that "employees under 20 years of age are only required to earn at least 85% of the State Minimum Wage Rate for the first 6 months of employment or $6.16 per hour," under Lab. & Empl. § 3-413(d)(1). *Id.* Section 13A-117(e) provides that "[t]he County minimum wage requirements shall not apply to an employee who . . . is an individual under the age of 19 and is

employed no more than twenty (20) hours in a week." And, Lab. & Empl. § 3-413(d)(1)(i) provides, with exceptions not relevant here, that "an employer may pay an employee a wage that equals a rate of 85% of the State minimum wage established under this section if the employee is under the age of 20 years," although an employer only may pay the lower wage "for the first 6 months that the employee is employed," *id.* § 3-413(d)(1)(ii).

Plaintiffs concede, as they must, that "the PGCMWL excludes from its coverage employees under the age of 19 years who are employed no more than 20 hours in a week." Pls.' Opp'n 10. But, they counter that this law only provides a basis for Defendants to argue that M.M. is "entitled to less in damages pursuant to the PGCMWL for certain workweeks." *Id.* Given that Plaintiffs claim that each of them worked "between approximately 20 and 25 hours per week" for Defendants, and that Plaintiffs received pay as low as $3.17 per hour, below even the lower minimum wage for minors, Second Am. Compl. ¶¶ 35–36, M.M.'s PGCMWL claim is sufficient to withstand Defendants' motion, although the scope of her damages may be the proper subject of a summary judgment motion following discovery.

### FLSA Retaliation Claim

Plaintiffs claim that Defendants terminated them in retaliation for bringing this lawsuit. The elements of a retaliation claim under the FLSA are: "(1) [plaintiff] engaged in an activity protected by the FLSA; (2) [plaintiff] suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.,* 515 F.3d 334, 340 (4th Cir. 2008). Defendants challenge the third element – causation. Defs.' Mot. 12–13. In their view, the retaliation claim fails because Plaintiffs have "to prove that '[they] would not have been fired *but for* [their] assertion of FLSA rights,'" *id.* at 12 (quoting *Wolf v. Coca-*

*Cola Co.*, 200 F.3d 1337, 1343 (11th Cir. 2000) (emphasis added)), and "Paragraph 77 of the [Second Amended Complaint] recites a justification other than retaliation for Defendants' dismissal of the Plaintiffs"—their "'time-card shenanigans'" and "'the quality of work that is being done or not done,'" *id.* at 12–13 (quoting Second Am. Compl. ¶ 77).

*Wolf*, an Eleventh Circuit case, is not binding on this Court. And, while it is true that, for Title VII retaliation claims, the causal relationship must be one of "but-for causation," *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528, 2533 (2013), the Fourth Circuit has not yet considered the application of this holding to FLSA retaliation claims. On summary judgment, this Court has construed *Nassar* and *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) (addressing proof required for but-for causation in disparate treatment claim pursuant to Age Discrimination in Employment Act) to "requir[e] a plaintiff in an FLSA retaliation case *to prove*, *ultimately*, that the plaintiff's protected activity was the 'but-for' cause of the challenged adverse action." *Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 778 n.11 (D. Md. 2014) (emphasis added). Significantly, it also observed:

> The effect, if any, of . . . *Nassar* . . ., has not been addressed as to FLSA cases. However, as noted by this Court, establishing "but-for" causation is the ultimate burden that a plaintiff must prove at trial, while at the summary judgment stage, a plaintiff "faces a less onerous burden of making a prima facie case of causality." *Ford v. Berry Plastics Corp.,* No. RDB–12–0977, 2013 WL 5442355, at *10 n. 8 (D.Md. Sept.27, 2013). Therefore, this Court need not reach the issue of whether *Nassar* applies to the FLSA.

*Skrzecz v. Gibson Island Corp.*, No. RDB-13-1796, 2014 WL 3400614, at *11 (D. Md. July 11, 2014) (citation omitted). Likewise, on a motion to dismiss, I need not determine whether *Nassar* applies to the FLSA. *See id.*

Defendants argue that Plaintiffs served Defendants on February 10, 2015, and were not fired until March 23, 2015, such that there was no temporal proximity. *Id.* Notably, Defendants

17

do not cite any case law saying that one and a half months is too long for temporal proximity. Plaintiffs contend that the firing followed the filing and notice of the suit closely enough to state a claim based on temporal proximity.[5]  Pls.' Opp'n 11.

In *Mould*, in which the plaintiff claiming retaliation in violation of the FLSA alleged that "he was fired within two months after he filed the instant lawsuit asserting violations of the FLSA," this Court held that "[s]uch temporal proximity is sufficient to establish a *prima facie* causal connection between an employee's protected conduct and an employer's adverse action." 2013 WL 4506134, at *2.  The Court observed that, in *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994), the Fourth Circuit noted that it previously "had found four-month period in between protected activity and adverse employment action to constitute a causal nexus." *Mould*, 2013 WL 4506134, at *2.  "[M]ere temporal proximity between the protected activity and the adverse employment action is sufficient to establish a *prima facie* causal connection."  *Id.*  Here, the temporal proximity between Plaintiffs' protected activity, that is, the February 10, 2015 service of the complaint in this case, and Defendants' adverse action, that is, the March 23, 2015 termination, is sufficient to allege a causal connection.[6]  *See id.*; *Carter*, 33 F.3d at 460.

---

[5] Plaintiffs maintain that, even if the termination were too distant, they also alleged in Paragraphs 70–83 of the Second Amended Complaint that Defendants' chief executive officer "drove to Plaintiffs' worksite, waived an email from his (former) lawyer at one of the Plaintiffs, said 'your lawyer can talk to our lawyer,' threatened to call the police, and fired the Plaintiffs."  Pls.' Opp'n 11.  Yet, these allegations do little for their causation argument because the email did not relate to this case but rather to Defendants' assertion that Plaintiffs engaged in "time-card shenanigans" and that there was an issue to discuss "with respect to the quality of the [Plaintiffs'] work that is being done or not done."  Second Am. Compl. ¶¶ 76–81.

[6] The docket indicates that Plaintiffs served K & S Management Services, Inc. on January 28, 2015.  Even this earlier date results in a span of less than two months between service and termination, which is still close enough for causation.  *See Mould*, 2013 WL 4506134, at *2; *Carter*, 33 F.3d at 460.

In their Reply, Defendants raise a new argument in opposition to the retaliation claim: They contend that "Plaintiff Milagro Martinez . . . 'engaged in theft and dishonesty' shown on the office building's video surveillance footage," and "Discharge was for those reasons, not retaliation." Defs.' Reply 16. They base their argument on an administrative decision on Milagro's unemployment claims. *Id.* Because Defendants introduced this argument in their Reply, I granted Plaintiffs' request to file a Surreply. *See* Loc. R. 105.2(a) (stating that surreplies may not be filed without leave of court). *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (stating that surreplies "may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply"). In their Surreply, Plaintiffs argue that the administrative finding of theft is not preclusive. Pls.' Surr. 2. Defendants filed a response to the Surreply without first seeking leave to do so, arguing that the "administrative proceeding[] ha[s] *res judicata* implications." Defs.' Resp. 1, ECF No. 45. I will disregard this filing. See Case Management Order ¶ B.6, ECF No. 4 (requiring compliance with Local Rules), Paperless Order, ECF No. 33 (accepting motion to dismiss notwithstanding failure to request pre-motion conference in compliance with Case Management Order, and reminding counsel of the need to comply with Case Management Order); Loc. R. 105.2 (not permitting surreplies without leave of court).

Even if I were to consider Defendants' response to the Surreply, it would not affect the outcome. The Surreply, as well as the argument first raised in Defendants' reply, support Defendants' contention that this suit was not the but-for cause of Plaintiffs' termination. As noted, whether this suit was the but-for cause is not at issue on a motion to dismiss. *See Skrzecz*, 2014 WL 3400614, at *11. Insofar as Defendants may seek to show that, under the burden-shifting framework of *McDonnell–Douglas*, they had a legitimate reason for Plaintiffs'

19

termination, this argument also simply is not relevant at this stage. *See Lee v. Safeway*, No. RDB-13-3476, 2014 WL 4926183, at *7 n.10 (D. Md. Sept. 30, 2014) ("The *McDonnell Douglas* framework . . . is not appropriate at the motion to dismiss stage, as *McDonnell Douglas* requires the consideration of evidence offered by the plaintiff *and* the defendant. Under Rule 12(b)(6) of the Federal Rules of Evidence, however, the court may consider only the factual allegations asserted by the Plaintiff in her complaint. *See Edwards,* 178 F.3d at 244. Since this Court is construing Defendant's Motion as a motion to dismiss, only arguments under this standard will be addressed."). Defendants' motion to dismiss is denied as to the FLSA retaliation claim.

## **ORDER**

Accordingly, it is, this <u>2nd</u> day of <u>March</u>, <u>2016</u>, hereby ORDERED that Defendants' Motion to Dismiss, ECF No. 29, IS DENIED. Defendants shall file an answer by March 16, 2016.

                                                                          /S/
                                                Paul W. Grimm
                                                United States District Judge